GARBARINI FITZGERALD P.C.
Richard M. Garbarini (RG 5496)
rgarbarini@garbarinilaw.com
Thomas FitzGerald (TF 2426)
tfitzgerald@garbarinilaw.com
Latrisha Desrosiers (LD 6971)
420 Lexington Ave.
Suite 2743
New York, New York 10170
Telephone: (212) 300-5358
Facsimile: (888) 265-7054



*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

GILBERT CARANDANG and MARIA ROSARIO
CARANDANG,

                     Plaintiffs,

               v.

ROBERT SHAPIRO, LAURA SHAPIRO,
ALEXANDRA SHAPIRO, WHEN IT'S CHILE
IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI
MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS,
GRAND CENTRAL ZOCALO, LLC d/b/a
ZOCALO, and MARCO ANDRADE,

                  Defendants.
-------------------------------------------------------------------x

Case No.: 12-cv-5683 (PAC)(AJP)

ECF CASE

**FIRST AMENDED COMPLAINT AND
JURY DEMAND**

     Plaintiffs Gilbert Carandang ("CARANDANG") and Maria Rosario Carandang

("ROSARIO") by and through their attorneys at GARBARINI FITZGERALD P.C., as and for their

First Amended Complaint and Jury Demand against Robert Shapiro, Laura Shapiro, Alexandra

Shapiro, When It's Chile It's Hot, Inc. d/b/a Flex Mussels, PEI Mussel Kitchen, LLC d/b/a Flex

Mussels, and Grand Central Zocalo, LLC d/b/a Zocalo alleges, upon personal knowledge as to

themselves, and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.      Flex Mussels and Zocalo are casual dining restaurants.  Flex Mussels has two locations, one on the Upper East Side of Manhattan and one in Union Square.  Zocalo has one location, in Grand Central Terminal, which is currently the subject of an on-going dispute with the New York City Metropolitan Transit Authority.  Flex Mussels uptown is predominantly owned by Laura Shapiro.  The Flex Mussels downtown location is predominantly owned by Robert Shapiro and Laura Shapiro.  Zocalo is owned in its entirety by Robert Shapiro and Laura Shapiro.

2.      The restaurants are 100% owned by the individual Defendants and constitute a single enterprise referred to here as the "Flex Restaurant Group."

3.      Plaintiff CARANDANG brings this action, among other bases, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") to remedy violations of the wage-and-hour provisions of the FLSA by Defendants, that have deprived Plaintiff of his lawful overtime wages, as well as the retaliation provision 29 U.S.C. § 215.

4.      Plaintiff CARANDANG also brings this action for unpaid wages, including but not limited to unpaid overtime and spread-of-hours wages, pursuant to the New York Labor Law Article 6, §§ 190 *et seq*. and Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law").

5.      On December 9, 2011 a Complaint and Jury Demand was filed in this Court by Plaintiff CARANDANG claiming unpaid wages under the FLSA and New York State Labor Law, entitled *Carandang v. Robert Shapiro, et al.*, 11-cv-8994 which was amended on December 15, 2011.  Almost immediately after the Amended Complaint was served on Defendants, LAURA SHAPIRO, in concert with the other Defendants, retaliated in the most nefarious and

vicious attack possible; by filing fraudulent criminal charges against CARANDANG which resulted in CARANDANG being incarcerated for 7 days, including over the Christmas holiday.

6.    The retaliation had its intended effect, CARANDANG withdrew his FLSA Complaint without prejudice while the bogus criminal charges were pending.

7.    CARANDANG spent nearly 8 months tortured by the fake charges, until they were finally dismissed on July 17, 2012.  CARANDANG also brings state law claims for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Malicious Prosecution, Abuse of Process and False Imprisonment.  CARANDANG's wife, Plaintiff ROSARIO, also brings a state law claims for Negligent Infliction of Emotional Distress for the emotional trauma and physical ailments suffered by ROSARIO due to the false arrest of her husband, having her home searched, and nearly 8 months of fear and intimidation.

8.    The dehumanization and torture of CARANDANG and his wife, in direct response to the filing of an FLSA claim, represents the harshest form of retaliation possible.

9.    CARANDANG also brings this action pursuant to the retaliation provisions of the FLSA, for the conduct described in this First Amended Complaint.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

11.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) (District where all defendants reside, with the exception of ANDRADE) and (b)(2) (District in which a substantial part of the events or omissions giving rise to the claims occurred).

12.     At all times relevant to this First Amended Complaint, Plaintiff CARANDANG

and each of the Defendants were engaged in commerce and/or the production of goods for

commerce within the meaning of 29 U.S.C. § 206(a) and 207(a).

13.     The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to

each of the Defendants.

14.     Plaintiff ROSARIO's claims arise from the exact same nucleus of facts giving rise

to the retaliation claims of CARANDANG and are properly before this Court pursuant to 28

U.S.C. § 1367.

## PARTIES

15.     Plaintiff GILBERT CARANDANG ("CARANDANG") is a resident of Queens,

New York and was at all relevant times employed by the Defendants in the City and County of

New York.

16.     Plaintiff MARIA ROSARIO CARANDANG ("ROSARIO") is the wife of

CARANDANG and a resident of Queens, New York.

17.     Defendant ROBERT SHAPIRO ("ROBERT") is a resident of New York and at

all times relevant to this First Amended Complaint was the Co-Owner, Operator and/or

Managing Member of Defendants WHEN IT'S CHILE IT'S HOT INC. d/b/a FLEX MUSSELS,

PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS and GRAND CENTRAL ZOCALO,

LLC d/b/a ZOCALO.

18.     Defendant LAURA SHAPIRO ("LAURA") is a resident of New York and at all

times relevant to this First Amended Complaint, the Co-owner, Operator, Managing Member

and/or President of Defendants WHEN IT'S CHILE IT'S HOT INC. d/b/a FLEX MUSSELS,

PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO.

19.     Defendant ALEXANDRA SHAPIRO ("ALEXANDRA") is a resident of New York and at all times relevant to this First Amended Complaint the Co-Owner, Operator and/or Managing Member of Defendants WHEN IT'S CHILE IT'S HOT INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO.

20.     WHEN IT'S CHILE IT'S HOT INC. d/b/a FLEX MUSSELS ("FLEX UPTOWN") is a corporation formed under the laws of the State of New York and the corporate owner of the Flex Mussels restaurant located at 174 East 82nd St., New York, New York.  FLEX UPTOWN is 70% owned by LAURA SHAPIRO.

21.     Upon information and belief, at all times relevant to this First Amended Complaint, Defendant ROBERT through his operation and management of FLEX UPTOWN, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

22.     At all times material hereto, ROBERT participated in, assisted in, supervised, guided and totally controlled FLEX UPTOWN in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, FLEX UPTOWN was the "alter ego" of ROBERT and dominated, controlled and supervised by ROBERT to such a degree that it had no independent ability to function.

23.     Upon information and belief, at all times relevant to this First Amended Complaint, Defendant LAURA through her operation and management of FLEX UPTOWN,

5

maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

24.    At all times material hereto, LAURA participated in, assisted in, supervised, guided and totally controlled FLEX UPTOWN in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, FLEX UPTOWN was the "alter ego" of LAURA and dominated, controlled and supervised by LAURA to such a degree that it had no independent ability to function.

25.    Upon information and belief, at all times relevant to this First Amended Complaint, Defendant ALEXANDRA through her operation and management of FLEX UPTOWN, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

26.    At all times material hereto, ALEXANDRA participated in, assisted in, supervised, guided and totally controlled FLEX UPTOWN in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, FLEX UPTOWN was the "alter ego" of ALEXANDRA and dominated, controlled and supervised by ALEXANDRA to such a degree that it had no independent ability to function.

27.    PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS ("FLEX DOWNTOWN") is a limited liability company formed under the laws of the State of New York and is the corporate owner of the Flex Mussels restaurant located at 154 West 13th St., New York, New York.

28.    Upon information and belief, at all times relevant to this First Amended Complaint, Defendant ROBERT was, and is, the Managing Member through his operation and

6

management of FLEX DOWNTOWN, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

29.    At all times material hereto, ROBERT participated in, assisted in, supervised, guided and totally controlled FLEX DOWNTOWN in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, FLEX DOWNTOWN was the "alter ego" of ROBERT and dominated, controlled and supervised by ROBERT to such a degree that it had no independent ability to function.

30.    Upon information and belief, at all times relevant to this First Amended Complaint, Defendant LAURA was, and is, a Managing Member and through her operation and management of FLEX DOWNTOWN, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

31.    At all times material hereto, LAURA participated in, assisted in, supervised, guided and totally controlled FLEX DOWNTOWN in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, FLEX DOWNTOWN was the "alter ego" of LAURA and dominated, controlled and supervised by LAURA to such a degree that it had no independent ability to function.

32.    Upon information and belief, at all times relevant to this First Amended Complaint, Defendant ALEXANDRA through her operation and management of FLEX DOWNTOWN, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

33.    At all times material hereto, ALEXANDRA participated in, assisted in, supervised, guided and totally controlled FLEX DOWNTOWN in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, FLEX DOWNTOWN

7

was the "alter ego" of ALEXANDRA and dominated, controlled and supervised by ALEXANDRA to such a degree that it had no independent ability to function.

34.    GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO ("ZOCALO") is a limited liability company formed under the laws of the State of New York and is the corporate owner of the Zocalo restaurant located at 109 East 42nd St., New York, New York.  ZOCALO is owned 99% by LAURA and 1% by ROBERT.

35.    Upon information and belief, at all times relevant to this First Amended Complaint, Defendant ROBERT through his ownership, operation and management of ZOCALO, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

36.    At all times material hereto, ROBERT participated in, assisted in, supervised, guided and totally controlled ZOCALO in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, ZOCALO was the "alter ego" of ROBERT and dominated, controlled and supervised by ROBERT to such a degree that it had no independent ability to function.

37.    Upon information and belief, at all times relevant to this First Amended Complaint, Defendant LAURA through her ownership, operation and management of ZOCALO, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

38.    At all times material hereto, LAURA participated in, assisted in, supervised, guided and totally controlled ZOCALO in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, ZOCALO was the "alter ego" of LAURA and

8

dominated, controlled and supervised by LAURA to such a degree that it had no independent ability to function.

39.     Upon information and belief, at all times relevant to this First Amended Complaint, Defendant ALEXANDRA through her operation and management of ZOCALO, maintained control, oversight, and direction over the operation of its facilities, including its employment practices, with respect to CARANDANG.

40.     At all times material hereto, ALEXANDRA participated in, assisted in, supervised, guided and totally controlled ZOCALO in its decision making, financing and other affairs.  At all times relevant to this First Amended Complaint, ZOCALO was the "alter ego" of ALEXANDRA and dominated, controlled and supervised by ALEXANDRA to such a degree that it had no independent ability to function.

41.     At all material times material to this First Amended Complaint, Defendants FLEX UPTOWN, FLEX DOWNTOWN, and ZOCALO (referred to here as the "FLEX RESTAURANT GROUP") functioned as a single entity under the control of the individual defendants with shared core facilities including management, accounting, human resources, food and beverage and supplies.

42.     Employees of FLEX UPTOWN, FLEX DOWNTOWN and ZOCALO would routinely move between the various restaurants.

43.     The individual restaurants in the FLEX RESTAURANT GROUP shared more than just employees.  For example, the sauces for the Flex Mussels restaurants were often made at the Zocalo restaurant.

44.    The FLEX RESTAURANT GROUP is a single entity for all purposes germane to the First Amended Complaint.  A single entity, as described below, which is merely the "alter-ego" of ROBERT, LAURA and ALEXANDRA.

45.    MARCO ANDRADE ("ANDRADE") is the Manager of ZOCALO and a resident of Queens, New York.

## ROBERT, LAURA and ALEXANDRA's
## CONTROL OVER THE FLEX RESTAURANT GROUP

46.    At all times material hereto, ROBERT, LAURA and ALEXANDRA treated the FLEX RESTAURANT GROUP like their own personal piggy bank.

47.    In fact, in a previous matter filed in this Court under the FLSA entitled *Brown et al. v. Robert Shapiro et al.*, 11-cv-09419, ROBERT, LAURA and ALEXANDRA conceded individual liability for the corporate entities named herein.

48.    At all times material hereto, ROBERT maintained an American Express Corporate Card in the name of each of the corporate Defendants which he used for his own personal expenses.  ROBERT, in fact, ran up significant personal charges each month on the cards which were paid by the FLEX RESTAURANT GROUP.

49.    At all times material hereto, LAURA maintained an American Express Corporate Card in the name of each of the corporate Defendants which she used for her own personal expenses.  LAURA, in fact, ran up significant personal charges each month on the cards which were paid by the FLEX RESTAURANT GROUP.

50.    At all times material hereto, ALEXANDRA maintained an American Express Corporate Card in the name of each of the corporate Defendants which she used for her own personal expenses.  ALEXANDRA, in fact, ran up significant personal charges each month on the cards which were paid by the FLEX RESTAURANT GROUP.

51.    At all times material hereto, ROBERT and LAURA's daughter Rachel Shapiro, who at no time was an employee of any of the corporate Defendants, maintained an American Express Corporate Card in the name of WHEN IT'S CHILE IT'S HOT and Warren Business Services which she charged her personal expenses. These expenses were paid by the FLEX RESTAURANT GROUP.

52.    At all material times, in addition to her salary, LAURA received between $2,500 and $7,500 per week by check from the FLEX RESTAURANT GROUP. This money was recorded on the books of the corporate defendants as "Loan to Shareholder". The "Loans to Shareholders", of course, were never paid back.

53.    LAURA regularly directed CARANDANG to withdraw funds by checks drawn to CARANDANG were either given to LAURA personally or deposited into LAURA's personal checking account at TD Bank. LAURA would instruct CARANDANG to wire money from the corporate defendants' bank account to her personal bank account at Bank of Nova Scotia in Canada.

54.    At all material times, in addition to her salary, ALEXANDRA received between $2,500 and $3,500 per week by check which was also charged as a "Loan to Shareholder" to the various Defendants. The "Loans to Shareholders", of course, were never paid back.

55.    LAURA, ALEXANDRA and Zachary Young would often sign the name of ROBERT on bank checks written to themselves, to be used for their own benefit.

56.    ROBERT also entered into a "Loan" agreement whereby FLEX DOWNTOWN would receive funds from FLEX UPTOWN and ZOCALO to cover the construction costs and initial costs for FLEX DOWNTOWN. These loans were not credited to FLEX UPTOWN or

11

ZOCALO but as the personal investment of ROBERT and LAURA on the general ledger for FLEX DOWNTOWN.

57.     At all material times to this First Amended Complaint, the personal living expenses of ROBERT's mother Elaine Shapiro, including the monthly common charges for Elaine Shapiro's condominium and for the caregiver for Elaine Shapiro were paid, at the direction of ROBERT, through the operating accounts of FLEX UPTOWN and ZOCALO.

58.     At all times material to this First Amended Complaint, ALEXANDRA had her rent paid through the corporate defendants, and when she needed spending money while on vacation in Florida, ALEXANDRA simply called New York and directed CARANDANG to deposit checks into her account.

59.     ROBERT and LAURA are the sole owners of a St. Thomas Virgin Island's entity called Tropical Customs d/b/a Warren Business Services.

60.     Warren Business Services is in the business of importing and exporting goods into and from the Virgin Islands.  Warren Business Services performs no services which inure any benefit to the FLEX RESTAURANT GROUP.

61.     At all material times to this First Amended Complaint, and at the direction of ROBERT and LAURA, the FLEX RESTAURANT GROUP paid for the American Express charges incurred by Warren Business Services, for the benefit of the SHAPIRO's and Warren Business Services.

62.     At all material times to this First Amended Complaint, and at the direction of ROBERT and LAURA, the FLEX RESTAURANT GROUP also paid for those Warren Business Services American Express Cards used by ROBERT, LAURA and the Defendants' daughter

12

Rachel Shapiro.  The charges by Rachel Shapiro, paid for by the FLEX RESTAURANT GROUP, are solely personal.

63.    LAURA had her non corporate credit cards paid for by the corporate defendants, and routinely had cash delivered to her for her personal use.

64.    At no time was there any separation in the funds belonging to the FLEX RESTAURANT GROUP and the personal funds of Defendants ROBERT, LAURA, and ALEXANDRA.

65.    ROBERT, LAURA, ALEXANDRA and Rachel Shapiro hold Platinum, Plumb and Green American Express Cards in the name Warren Business Services.  These charge cards are used for the personal expenses of the individuals and the monthly charges are paid through the various members of the FLEX RESTAURANT GROUP.

## PLAINTIFFS' FACTUAL ALLEGATIONS

66.    Plaintiff CARANDANG was hired as a bookkeeper at the FLEX RESTAUARANT GROUP on or about February 17, 2010.

67.    CARANDANG's employment at the FLEX RESTAURANT GROUP was terminated on or about October 7, 2011.

68.    CARANDANG originally answered an advertisement placed on Craigslist by Defendants for a General Manager position.

69.    CARANDANG submitted a resume which was reviewed by Defendants and CARANDANG was offered an interview for the General Manager position.

70.    CARANDANG was not offered the General Manager position, but was offered a position as a bookkeeper with the intent that at some point he would be promoted to the exempt-General Manager position.

71.    CARANDANG was paid per hour for the first pay period at the rate of $35 per hour and then was paid at the rate of $20 per hour from February 25, 2010 through September 12, 2010.

72.    CARANDANG received paychecks from all three corporate Defendants.

73.    CARANDANG was kept off of payroll until January of 2011 in an attempt by Defendants to avoid payroll taxes.

74.    In or about January of 2011, CARANDANG was paid through the payroll for GRAND CENTRAL ZOCALO, WHEN IT'S CHILE IT'S HOT and PEI MUSSEL KITCHEN, and his compensation was subject to all lawful deductions and payroll tax.

75.    The payroll checks would alternate between the corporate defendants each week, paying CARADANG as an employee exempt from overtime provisions of the FLSA.

76.    Plaintiff CARANDANG physically worked at the FLEX UPTOWN location from February 17, 2010 until in or about May of 2010, at which time he was transferred to the unfinished FLEX DOWNTOWN location, an active construction site at that time.

77.    Consistent with Defendants pattern or practice, CARANDANG would regularly work in excess of 40 hours per week without being paid overtime wages.

78.    In or about April of 2010, CARANDANG was required to clock in and out each day, and clocked in and out each day until his termination in October of 2011.

79.    CARANDANG worked most often five days per week, and occasionally six days per week.  CARANDANG would also work from home because Defendants would continue to give CARANDANG work even after he left the workplace.

## HOURS AND PAY

80.     From February 17, 2010 through the second of week of March of 2010, CARANDANG's scheduled hours were 12:00 p.m. until 8:00 p.m., 5 days per week. CARANDANG worked through all breaks, and ate at his desk while he worked. CARANDANG was paid $800 per week, at the rate of $20.00 per hour for 40 hours per week.

81.     From the third week of March 2010 through the second week of April of 2010, CARANDANG was required to report to work at 10:00 a.m. and worked until between 7:00 and 8:00 p.m. each day, five days per week. CARANDANG worked through all breaks, and ate lunch at his desk while he worked. CARANDANG worked 55-60 hours per week for this three week period, but was still paid $800 per week. CARANDANG was not paid overtime or spread-of-hours pay during this period.

82.     In the first week of May of 2010, CARANDANG was required to work at the 13th Street location until his termination in October of 2011. During this period his hours were changed, requiring him to report to work between 8:30 a.m. and 9:00 a.m. and work until at least 8:00 p.m. each day. CARANDANG worked through his lawful break-time, and ate lunch while he worked. CARANDANG worked between 60 and 65 hours per week, yet was still was paid $800 per week. At no time was CARANDANG paid overtime, spread-of-hours, break time pay for this period..

83.     In the few instances CARANDANG came into work after 9 a.m., he would be greeted by e-mail from ROBERT, LAURA and/or William Lee wanting to know where he was and why he was late.

84.     On September 13, 2010, CARANDANG's salary was increased to $25.00 per hour due to increased responsibilities for FLEX DOWNOWN. CARANDANG, however, was

still paid for only 40 hours per week, or $1,000 per week.  CARANDANG worked 60-65 hours

per week from May 2010 through his termination in October of 2011.

### CARANDANG WAS AN EMPLOYEE

85.     Defendants shockingly have claimed CARANDANG was not an employee.  This

is completely false, and not supported by prevailing law.

86.     CARANDANG worked as a bookkeeper.

87.     CARANDANG was not in business for himself.

88.     Defendants provided instructions as to when CARANDANG's work was to be

completed.

89.     The Defendants provided instructions as to where and how CARANDANG's

work was to be performed.

90.     CARANDANG was required to report to the Defendants on a regular basis.

91.     CARANDANG was required to work an established work schedule.

92.     CARANDANG was required to submit reports.

93.     The Defendants reviewed and/or inspected CARANDANG's work on a daily

basis.

94.     The Defendants provided CARANDANG with an office, computer, stationary

and guidance which he needed to perform his services.

95.     The Defendants reimbursed CARANDANG for expenses incurred while

performing his services such as purchase of paper supplies, printer cartridges and mailing

expenses.

96.     The Defendants provided training to help CARANDANG perform his services.

97.    CARANDANG could not take time off without the knowledge or approval of the Defendants.

98.    The Defendants established CARANDANG's rate of pay at $20 per hour from February 25, 2010 to September 12, 2010 and $25 per hour from September 13, 2010 to time of termination in October of 2011.

99.    CARANDANG was clearly an employee, and Defendants used the threat that he is not an employee to discourage CARANDANG from filing an FLSA claim.

## CARANDANG'S POSITION WAS MISCLASSIFED

100.    CARANDANG's job duties as bookkeeper were predominantly data entry, and required no application of accounting principles.

101.    On a daily basis, CARANDANG would log onto the on-line banking to make sure that Defendants received the sales receipts from the credit card companies; ensure the credit card receipts were signed and match the order checks; make sure the cash was properly recorded from each restaurant; and, record vendor invoices in quick books.

102.    CARANDANG did not even have the discretion to pay a bill without the approval of ROBERT, LAURA, ALEXANDRA, Joseph Scalice, Jennifer Gavino or Zachary Young.

103.    CARANDANG was also tasked with changing the deductions of employees, without the employees consent, in order to reduce payroll taxes.  Attached as **Exhibit A** is a true and correct copy of an e-mail from LAURA dated June 8, 2011 instructing CARANDANG to increase the deductions and mark the employees as married, without the employees consent, because "the taxes are too high."

104.    This required no independent judgment on the part of CARANDANG, simply data input.

105.    No employees reported to CARANDANG.

106.    In addition, CARANDANG's duties from March of 2010 until the first week of April of 2010 included altering payroll reports to indicate FLEX RESTAURANT GROUP's employees worked no more than 40 hours per week.  At all times relevant to this First Amended Complaint, any employee that worked in excess of 40 hours would have the overtime qualifying hours eliminated.  This required simple deduction in the Squirrel and/or ALOHA programs.

107.    In April of 2010, Robert Shapiro sent an e-mail to CARANDANG informing CARANDANG that only managerial employees should be fraudulently changing the hours for the employees.  This task was then performed by ALEXANDRA, and other managerial employees.

108.    This included changing the hours of the kitchen employees even though the kitchen employees were paid by shift.

109.    No advanced knowledge, or even a college degree was necessary for the tasks CARANDANG was assigned.

110.    In fact, at all times relevant to CARANDANG's employment, there were no discretionary tasks involved.

111.    From March of 2010 through June of 2011, William Lee, the Defendants' accountant, sent various employees to do work alongside CARANDANG.

112.    These employees included, Chi Chung, Jason Lee and Nancy Lu, all of whom were not college graduates, in fact, they were all in college.

113.    Chi Chung, Jason Lee and Nancy Lu performed identical job tasks as CARANDANG.

114.    Chi Chung, Jason Lee and Nancy Lu were paid on an hourly basis.

18

115.    In or about June of 2011, Defendants hired Angela Letra to perform the identical job duties of CARANDANG.

116.    Letra was a wine and liquor saleswoman to restaurants and bars prior to working for Defendants.

117.    Upon information and belief, Letra had no bookkeeping experience prior to working for Defendants.

118.    From June of 2011 through October of 2011, Letra was paid by hour at the rate of $20 per hour.

119.    While Letra was paid by the hour for doing identical tasks, CARANDANG was treated as an exempt employee in the same position.

120.    In the time CARANDANG was employed by Defendants, he missed only seven days of work due to illness.  CARANDANG would be docked pay for any days missed.

121.    If CARANDANG did not work, he was not paid for that day.

122.    In December of 2010, CARANDANG missed work due to illness. CARANDANG was docked pay for those days, even though CARANDANG worked from home.  CARANDANG has never been paid for this time.

123.    Starting on February 25, 2010, CARANDANG was paid $800 per week, with the promise from Robert Shapiro that CARANDANG would receive additional compensation on subsequent payrolls for overtime hours worked.

124.    From March of 2010 through September of 2011, Robert Shapiro and Alexandra Shapiro would, approximately once per month, give CARANDANG an additional paycheck for the overtime hours worked.

125.    From March of 2010 through September of 2010, the additional check would be for $800.

126.    From the third week of September of 2010 through October of 2011, the additional check would be for $1,000, and would not be cut through the payroll system, but drawn on the regular operating account.

127.    The check was for the additional hours worked.

128.    The payment for overtime hours worked through non-payroll checks is not unique to CARANDANG.

129.    For example, checks for Laura Petraceau, chef, and Kiyomi McCloskey, bartender, were also given non-payroll checks.  Neither employee had social security identification numbers which would have allowed them to work in the United States.  Both are residents of Canada, and both were illegally paid on a shift basis.

## RETALIATION FACTS

130.    On or about October 13, 2011, counsel for CARANDANG, Richard Garbarini of

GARBARINI FITZGERALD contacted Defendants' counsel, Richard Feldman of Rosenberg,

Feldman and Smith by e-mail providing written notice of the FLSA violations described in this

First Amended Complaint.

131.    On October 18, 2011, Mr. Feldman responded by claiming the Defendants were

engaged in an "investigation". The October 18, 2011 e-mail from Richard Feldman is attached

as **Exhibit B**.

132.    This was followed by an e-mail dated October 20, 2011 from Mr. Feldman

claiming the Defendants were "investigating" an alleged ". . . issuance and signing of checks

from our client's business accounts. Checks for significant amounts were made out by

[CARANDANG] to cash or to himself and our client is reviewing whether these funds were

properly deposited into the companies' bank accounts."

133.    The e-mail from Richard Feldman dated October 20, 2011, to Richard Garbarini

is attached as **Exhibit C**.

134.    Defendants at that time, and at all times, were well aware the checks to

CARANDANG or to cash were not deposited into the companies' accounts. In fact, every check

written to CARANDANG or to cash was authorized by ROBERT, ALEXANDRA, LAURA,

ANDRADE, Joseph Scalice, Zachary Young or Jennifer Gavino and used to make payments,

give cash to LAURA or ALEXANDRA, pay Ira Garr, contractors, etc.

135.    The threat of an allegation of embezzlement was intended for the sole purpose of

intimidating CARANDANG and forcing him to withdraw his rightful claims under the FLSA.

136.    CARANDANG had indeed been found guilty previously of embezzlement, and served just under 2 years in jail.  A fact known to ROBERT and LAURA from the day CARANDANG first interviewed to work for Defendants.

137.    ROBERT had mentioned CARANDANG's former incarceration on many occasions. Sometime in June or July of 2010 when Jackson Anderberg was hired as a chef, Robert Shapiro said "Here is another felon like you."

138.    In August of 2011, ROBERT was at the bar of FLEX DOWNTOWN when he received a criminal summons for a person unrelated to the Shapiro's or anyone in the company regarding restitution.  ROBERT stated "this is about your [CARANDANG's] criminal history." This was said in front of Anthony Felzen.

139.    When FLEX DOWNTOWN was opening, Defendants needed someone who could clean up from the construction.  CARANDANG recommended Jose Gonzalez.  ROBERT asked CARANDANG where he knew Gonzalez from, and CARANDANG responded "from jail."

140.    There came a time when Tom Kat Bakery sued the company, and SHAPIRO sent CARANDANG to pay off the bakery, saying "since you know the criminal system, you should go there."

141.    Joseph Scalice, Director of Operations for FLEX MUSSELS GROUP and Zachary Young, Pastry Chef of FLEX MUSSELS GROUP asked CARANDANG on several occasions "were you raped in jail."

142.    The threat of Defendants to fabricate a claim of embezzlement initially had no effect on CARANDANG, and he, through counsel, reiterated that he would be filing a case pursuant to the FLSA unless they could resolve the matter of the outstanding overtime-pay.

143.    On December 8, 2011 counsel for Defendants reiterated that Defendants were investigating an alleged theft by CARANDANG, and mysteriously claimed CARANDANG was not an employee.

144.    A true and correct copy of the e-mail from Richard Feldman dated December 8, 2011, to Richard Garbarini is attached as **Exhibit D**. The e-mail from Mr. Feldman also confirms that Defendants were aware of CARANDANG's past, and were using this to threaten him.

145.    Undeterred by the threats of Defendants, CARANDANG filed a case in this Court entitled *Carandang v. Robert Shapiro, et al.*, 11-cv-8994 under the FLSA on December 9, 2011. That Complaint was amended on December 15, 2011.

146.    On December 21, 2011, almost immediately after the Amended Complaint was served, LAURA, with the active participation of all Defendants, swore out a criminal complaint alleging "approximately one hundred fifty (150) checks drawn on the company account were all made payable to the defendant." A true and correct copy of the criminal complaint is attached as **Exhibit E**. LAURA and the other Defendants knew this was a materially false statement when it was made.

147.    LAURA also swore that the "three signators on the account and which after examination were not in fact their signatures." This would mean that LAURA swore CARANDANG signed the names of ROBERT, ALEXANDRA and ANDRADE, without their permission and with the intent to defraud. This too is a materially false sworn statement made for the sole purpose of retaliating against CARANDANG for filing a complaint under the FLSA. At no time did CARANDANG ever sign the name of ANDRADE to any check drawn to himself or cash. At no time did CARANDANG ever sign the name of ALEXANDRA to any check

23

drawn to himself or cash.  CARANDANG did sign the name of ROBERT on checks drawn to himself or cash, but only with express permission, and at no time with the intent to defraud.

148.    ANDRADE, ALEXANDRA, ROBERT and LAURA conspired to submit a false and malicious criminal complaint, with no basis in fact, knowing that with CARANDANG's past infractions CARANDANG's freedom would be taken away.

149.    This vicious, and evil attempt to punish CARANDANG by Defendants was planned to have CARANDANG sustain the toughest punishment possible; punishment for daring to file a wage-and-hour complaint.

150.    CARANDANG was arrested on December 21, 2011, and spent the next 7 days in jail, missing spending time with his family on Christmas. CARANDANG's home was searched; ROSARIO's laptop was taken along with an iPad and documents from the apartment.

151.    ROSARIO was traumatized and reduced to tears as officers executed a warrant based on the misstatements of LAURA.

152.    ROSARIO was forced to humiliate herself and ask neighbors for money to pay the high bail that was set.

153.    LAURA knew when she swore out the statement that CARANDANG wrote 150 checks totaling more than $50,000 to himself without permission and with the intent to defraud was a complete fabrication.  In fact, it is a complete impossibility. On a daily basis, the on-line banking statement is reviewed by LAURA, ROBERT and William Lee.

154.    Every day an account alert is also sent to Robert Shapiro indicating all withdrawals and checks posted.  Any discrepancy would immediately be found.

155.    Any check that is written to cash or to CARANDANG is questioned on a daily basis, and a reason and track for all funds must be provided by CARANDANG.

156.    ROBERT would also demand CARANDANG print out a check registry on a weekly basis.  The check registries contained the amount, payee, and the account details for the check.  Attached as **Exhibit F** is an e-mail from ROBERT to CARANDANG requesting the check registry be printed out for review.

157.    CARANDANG and ROBERT would then go through every check.

158.    At times CARANDANG would also have to go through the checks with LAURA and William Lee, the outside accountant.

159.    It was common-practice for CARANDANG to sign checks because he worked downtown in a construction zone for much of his employment.  There simply were no authorized signors present when checks need to be drawn.

160.    CARANDANG would routinely be directed to sign the name of  ALEXANDRA by ALEXANDRA herself to checks.  For example, on May 14, 2010, ALEXANDRA contacted CARANDANG by e-mail and demanded "JUST FAKE MY SIGNATURE."  A true and correct copy of the May 14, 2010 e-mail is attached as **Exhibit G**.

161.    On May 20, 2010, ALEXANDRA directed CARANDANG to "Forge dads sig. None of us will be there."  A true and correct copy of the May 20, 2010 e-mail is attached as **Exhibit H**.  This was a near every-day occurrence.

162.    Every dollar, however, that came in and went out of the FLEX RESTAURANT GROUP was closely monitored.  Attached as **Exhibit I** are various e-mail showing the incredibly scrutiny every transaction, no matter how small was watched.  CARANDANG was not allowed to make a single move without authorization.  Attached as **Exhibit J** is an e-mail dated August 31, 2010, demonstrating how every movement of CARANDANG was questioned.

163.    In fact, the Defendants routinely did not pay invoices to their primary vendors, and watched every cent, paying only certain invoices, often after vendors threatened to sue, or cut off supply.    The Defendants knew exactly, at any given moment relative to this First Amended Complaint, exactly where every cent in the organization was.

164.    The idea that 150 checks could somehow have "slipped" passed this scrutiny is absurd.

165.    In fact, each and every check, on a daily basis, was accounted for at the time of writing, can be accounted for now, and were authorized.

166.    A significant number of the checks drafted to CARANDANG went for cash to LAURA or cash to pay Ira Garr, a former partner at ZOCALO.    On a weekly basis, from the time CARANDANG was hired, CARANDANG was instructed by ANDRADE, with the knowledge and consent of ROBERT, to draft checks to cash or to CARANDANG which would then be used to pay partner Ira Gar $500.    The checks would most often be for $800, with the remaining $300 given to LAURA.    Attached as **Exhibit K** are the signed receipts for the cash to Ira Garr.

167.    The receipt of cash by LAURA is evidenced by e-mail dated June 23, 2010 wherein LAURA states that she wanted $1,000 to pay her Citibank credit card and $300 for another card.    Tellingly the e-mail closes with "I'm trying, Gilbert!!! SHHHHH!!!."    A true and correct copy of the June 23, 2010 e-mail from LAURA is attached as **Exhibit L**.

168.    In fact, LAURA and ALEXANDRA constantly called CARANDANG and demanded money from the various FLEX RESTAURANT GROUP accounts be deposited into their personal accounts.    Attached as **Exhibit M** are e-mail from LAURA and ALEXANDRA requesting money for ALEXANDRA's rent.

169.    **Exhibit N** is an e-mail dated August 30, 2010 from LAURA regarding $3,000 being deposited by CARANDANG into LAURA's personal account.

170.    LAURA would also have CARANDANG wire money to her personal account in Prince Edward Island at the Bank of Nova Scotia.  Attached as **Exhibit O** is an e-mail from LAURA directing CARANDANG to wire $2500 into her PEI account, as well as her personal checking account.

171.    Some of the checks drafted by CARANDANG to himself or cash were also used to get cash to pay off the contractor for FLEX DOWNTOWN, Ardian Paja, who demanded his construction crew be paid in cash.

172.    Two of the checks drafted by CARANDANG to himself or cash were deposited directly into ALEXANDRA's personal checking account while ALEXANDRA was in Florida.

173.    Numerous checks drafted by CARANDANG to himself or to cash were used to pay cash for tips, cash payments for overtime to a staff member, deposits for PEI artwork, cash payment to Dorene Winkler, ROBERT's personal electrical bill, and payments to the bar back.

174.    At least twenty-five checks drafted by CARANDANG to himself or cash went directly to Joseph Scalice.

175.    At least six checks were drafted by CARANDANG to himself or to cash for reimbursement for expenses of office supplies.

176.    Every check to CARANDANG or cash was reviewed by ROBERT, LAURA, Melinda Cedeno or William Lee, in their daily on-line review.  The Defendants, at all times, knew there were no monies being stolen by CARANDANG.

27

177.    ROBERT, LAURA and William Lee would also pay particular attention to transactions labeled "IM Withdrawal."  An IM Withdrawal is an immediate withdrawal check negotiated over the counter.

178.    Other employees also cashed checks to themselves for the benefit of the FLEX RESTAURANT GROUP or the individual defendants.  For example, Attached as **Exhibit P** is an e-mail from Josaphat Rodriguez, Manager of FLEX UPTOWN, stating "I'm going to cashed them on my name and give him the cash."

179.    As described herein, it was LAURA, ROBERT and ALEXANDRA who looted the companies, and used CARANDANG as a pawn.

180.    Defendants went even further in retaliation, attempting to recall, and actually recalling, other checks written by Defendants to compensate CARANDANG for his work.

181.    CARANDANG had kept multiple pay-checks, uncashed, because he was directed by ROBERT to hold them until there were funds in the accounts.  This was not something new, ROBERT frequently requested checks be held, and the Defendants had previously bounced checks to employees.

182.    Defendants also retaliated against CARANDANG by opposing his unemployment on the ground he was dismissed for cause and stole from the company.  Facts the Defendants knew to be false.

183.    Retaliation is nothing new to Defendants.  Defendants have made statements that they will seek to retaliate against any employee that files a matter under the FLSA or New York Labor Law.  Attached as **Exhibit Q** is an e-mail from Defendant ALEXANDRA after Raphael Bernitt filed an action in this Court under the FLSA and New York Labor Law stating:

"hi!!! do you have the addresses for rafael the dude suing us and for ricky the line cook uptown?

im gonna call immigration mooohahahahahahahahahahahah."


184.    DEFENDANTS have also engaged in other schemes to falsify documents and information for their benefit.

185.    ALEXANDRA submitted an application for the apartment where she currently resides, supported by fake tax returns for Laura and Robert for tax years 2008, 2009 and 2010 which materially differ from the tax returns actually filed with the Internal Revenue Service.

186.    Defendants ROBERT, LAURA, ALEXANDRA, and the FLEX RESTAURANT GROUP, engaged in a scheme to obtain insurance proceeds related to a March of 2011 fire at FLEX UPTOWN by submitting fraudulent, and inflated, invoices to Traveler's Insurance.

187.    From at least February of 2010 through September of 2011, Defendants , LAURA, ALEXANDRA, and the FLEX RESTAURANT GROUP caused the weekly changing of employee time records to eliminate overtime.

188.    Defendants ROBERT and LAURA responded to a Request For Proposal related to the rental space for Defendant ZOCOLO which contained materially false information. Information ROBERT and LAURA knew was false when the Request For Proposal was responded to the New York Metropolitan Transportation Authority.

189.    Defendants changed the lawful tax deductions of employees, with the employees consent, in order to reduce payroll taxes.

## FIRST CAUSE OF ACTION
### (*Fair Labor Standards Act – Failure to Pay Overtime*)
(Against Defendants ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO by Plaintiff CARANDANG)

190.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

191.    Defendants, and each of them, were engaged in a widespread pattern and practice of violating the FLSA, as detailed in this First Amended Complaint.

192.    At all times relevant, CARANDANG was engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 206(a) and 207(a).

193.    The overtime wage provisions set forth in §§ 201 *et seq*. of FLSA apply to each of the Defendants.

194.    Defendants are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

195.    Defendants have failed to pay CARANDANG the overtime wages to which he was entitled under FLSA.

196.    Defendants' violations of the FLSA, as described in this First Amended Complaint, have been willful and intentional.  Defendants have not made a good faith effort to comply with FLSA with respect to its compensation of Plaintiff.

197.    Because Defendants' violations of FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

198.    As a result of Defendants' willful violations of FLSA, CARANDANG has suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

199.    As a result of the unlawful acts of Defendants, CARANDANG has been deprived of overtime compensation and other wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### *(New York Labor Law: Unpaid Overtime Wages and Spread-of-Hours Pay)*
(Against Defendants ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO by Plaintiff CARANDANG)

200.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

201.    At all times relevant to this action, CARANDANG was an employee and each of the Defendants was employers within the meaning of the New York Labor Law.

202.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to each of the Defendants.

203.    Defendants, and each of them, have failed to pay CARANDANG the overtime wages to which he was entitled under the New York Labor Law.

204.    By Defendants, and each of them, failure to pay CARANDANG overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

205.    Due to Defendants' violations of the New York Labor Law, CARANDANG is entitled to recover from Defendants his unpaid overtime wages and spread-of-hours wages,

reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest,

liquidated damages, and other relief pursuant to New York Labor Law Article 19, §§ 650 *et seq.*

### THIRD CAUSE OF ACTION
(*Unpaid Compensation under N.Y. Labor Law §190 et seq.*)
(Against Defendants ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO by Plaintiff CARANDANG)

206.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

207.    As described above, each of the Defendants failed to pay Plaintiff CARANDANG

the straight-time compensation owed to him under the New York Labor Law.

208.    Defendants did not act in good faith in failing to pay CARANDANG the

compensation due to him.

209.    Plaintiff CARANDANG was damaged through the loss of this income.

210.    Due to Defendants' violations of the New York Labor Law, CARANDANG is

entitled to recover from Defendants his unpaid wages for all hours worked, costs of the action,

pre-judgment and post-judgment interest, liquidated damages, and other relief pursuant to New

York Labor Law Article 19, §§ 650 *et seq.*

### FOURTH CAUSE OF ACTION
(*Quantum Meruit*)
(Against Defendants ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO by Plaintiff CARANDANG)

211.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

212.    Throughout his tenure with Defendants, Plaintiff CARANDANG worked diligently and successfully.

213.    CARANDANG always worked with a reasonable expectation that he would be paid reasonable compensation for his work.

214.    Defendants failed to pay CARANDANG the reasonable compensation owed to him.

215.    CARANDANG was damaged through the loss of this income in an amount to be determined at the trial of this action.

### FIFTH CAUSE OF ACTION
(*Fair Labor Standards Act – Retaliation*)
(Against Defendants ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO by Plaintiff CARANDANG)

216.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

217.    At all relevant times, CARANDANG was engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

218.    The retaliation provisions set forth in Section 15(a)(3) of the FLSA apply to Defendants.

219.    As described herein, Defendants engaged in an intentional and malicious pattern of retaliating against CARANDANG in the harshest way possible.

220.    Defendants ROBERT, LAURA, ALEXANDRA, individually and on behalf of the FLEX RESTAURANT GROUP, caused a false and malicious police report to be filed resulting in the arrest and imprisonment of CARANDANG.

221.    All Defendants caused CARANDANG's pay to be recalled and checks cancelled due to CARANDANG filing a written claim for unpaid wages.

222.    All Defendants made material misrepresentations to the New York District Attorney's Office, Unemployment Board and New York City Police Department.

223.    As a result of Defendants' unlawful acts, CARANDANG is entitled to recover his back-pay, front-pay, punitive damages, compensatory damages, prejudgment interest, attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (*Intentional Infliction of Emotional Distress*)
(Against All Defendants by Plaintiff CARANDANG)

224.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

225.    In a particularly vicious act of retaliation, Defendants ROBERT, LAURA, ALEXANDRA, ANDRADE and the FLEX RESTAURANT GROUP intentionally conspired to have CARANDANG arrested under false pretenses.

226.    Defendants conduct as described herein was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

227.    By falsely and maliciously asserting that CARANDANG impersonated the Defendants ROBERT, ALEXANDRA and ANDRADE; falsely claiming CARANDANG conspired, and in fact succeeded, in stealing property valued at more than $50,000; falsely claiming that from February 2010 through October of 2011 CARANDANG falsified approximately 150 checks with the intent to defraud Defendants; providing false information, and misrepresenting and falsifying evidence, to the NYPD and Manhattan District Attorney's

34

Office; and by providing false testimony to the grand jury, Defendants intended to cause CARANDANG emotional distress.

228.    Defendants, and in particular LAURA, took the forgoing actions with the reckless disregard of the probability that doing so would cause emotional distress to CARANDANG.

229.    As a direct and foreseeable result of Defendants actions, CARANDANG has suffered severe emotional distress and actual damages in an amount to be determined at trial, and is also entitled to punitive damages as may be assessed by the jury.

## SEVENTH CAUSE OF ACTION
### (*Negligent Infliction of Emotional Distress*)
(Against All Defendants by Plaintiff CARANDANG)

230.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

231.    Defendants conduct as described herein was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

232.    ROSARIO was also forced to endure a police search of her home.

233.    ROSARIO suffered physical ailments, including high-blood pressure, was forced to see a physician and suffered severe emotional injuries as a direct and consequential result of the Defendants' acts.

234.    Plaintiffs suffered severe emotional injuries as a direct and consequential result of the Defendants' acts.

235.    As a direct and foreseeable result of Defendants actions, CARANDANG and ROSARIO have suffered, and will continue to suffer severe emotional distress and actual

35

damages in an amount to be determined at trial, and is also entitled to punitive damages as may be assessed by the jury.

### EIGTH CAUSE OF ACTION
#### (*Malicious Prosecution*)
(Against all Defendants by Plaintiff CARANDANG)

236.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

237.    Defendants ROBERT, ANDRADE and ALEXANDRA made material misrepresentations, claiming they did not sign certain checks and/or those checks were signed by CARANDANG.

238.    At no time did CARANDANG ever sign the name of ANDRADE or ALEXANDRA to a check drawn to himself or to cash.

239.    CARANDANG did sign the name of ROBERT to checks to himself or cash, but only after CARANDANG was directed to sign ROBERT's name.

240.    ROBERT, LAURA, ALEXANDRA, ANDRADE and the FLEX RESTAURANT GROUP participated in the commencement and maintenance of a baseless criminal prosecution of CARANDANG beginning on December 21, 2011.  Defendants played an active role in the criminal prosecution of CARANDANG by, inter alia, providing false information, and misrepresenting and falsifying evidence, to the NYPD and the Manhattan District Attorney's Office, thereby importuning those authorities to arrest and incarcerate CARANDANG and arraign him on a criminal complaint based on the false allegation that CARANDANG had forged 150 checks with the intent to defraud, when Defendants knew such allegation to be untrue.

241.    CARANDANG did sign the name of ROBERT to checks drawn to himself or cash, but only after CARANDANG was directed to sign ROBERT's name.

242.    The criminal prosecution of CARANDANG was terminated in his favor on July 17, 2012, when the Criminal Court granted the motion of CARANDANG's counsel to dismiss the First Amended criminal complaint.  There can be no further proceedings upon the dismissed complaint.

243.    Defendants acted without cause in the commencement and maintenance of the criminal prosecution of CARANDANG.  Defendants provided false information, and misrepresented and falsified evidence, to the NYPD and the Manhattan District Attorney's Office.

244.    Defendants acted with actual malice in connection with the commencement and maintenance of the criminal prosecution of CARANDANG, and in so doing intended to injure CARANDANG.

245.    As a direct and foreseeable result of Defendants malicious prosecution of CARANDANG, he has suffered actual damages in an amount to be determined at trial, and also is entitled to punitive damages as may be assessed by the jury.

## NINTH CAUSE OF ACTION
### (*Abuse of Process*)
(Against all Defendants by Plaintiff CARANDANG)

246.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

247.    ROBERT, LAURA, ALEXANDRA, ANDRADE and the FLEX RESTAURANT GROUP caused criminal process to be issued against CARANDANG, by intentionally, falsely and maliciously asserting that CARANDANG had committed various crimes, when Defendants knew those accusations to be untrue.

248.    Defendants intended to harm CARANDANG without excuse or justification.

249.    Defendants manipulated process to obtain a collateral objective.

250.    As a direct and foreseeable result of Defendants abuse of process, CARANDANG has suffered actual damages in an amount to be determined at trial, and also is entitled to punitive damages as may be assessed by the jury.

## TENTH CAUSE OF ACTION
### *(False Imprisonment)*
(Against all Defendants by Plaintiff CARANDANG)

251.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

252.    Defendants ROBERT, LAURA, ALEXANDRA, ANDRADE and the FLEX RESTAURANT GROUP intended to confine CARANDANG by intentionally, falsely and maliciously asserting that CARANDANG had committed various crimes.  Defendants played an active role in, and caused the confinement of, CARANDANG by, inter alia, providing false information, and misrepresenting and falsifying evidence, to the NYPD and the Manhattan District Attorney's Office, thereby importuning those authorities to arrest and incarcerate CARANDANG and arraign him on a criminal complaint based on Defendants' false allegation, when they knew such allegation to be untrue.  LAURA also made the same false accusation, under oath.

253.    As a result of Defendants' actions, CARANDANG was incarcerated and he was at all times conscious of his confinement.

254.    CARANDANG did not consent to his confinement.

255.    CARANDANG's confinement was not privileged.

256.    As a direct and foreseeable result of Defendants' false imprisonment of CARANDANG, he has suffered actual damages in an amount to be determined at trial, and also is entitled to punitive damages as may be assessed by the jury.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief from each of the Defendants, ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, and GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO, jointly and severally:

A.  An award to CARANDANG of his unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.* along with the attorneys' fees and costs of this action;

B.  An award of CARANDANG's unpaid overtime, spread-of-hours pay and liquidated damages pursuant to N.Y. Lab. Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations along with the attorneys' fees and costs of this action;

C.  An award of CARANDANG's unpaid wages, pre-judgment and post-judgment interest, liquidated damages, and other relief pursuant to New York Labor Law Article 19, §§ 650 *et seq.*

D.  An award of CARANDANG's *quantum meruit* unpaid wages.

E.  CARANDANG's back-pay, front-pay, punitive damages, compensatory damages, prejudgment interest, attorneys' fees and costs pursuant to Section 15(a)(3) of the FLSA;

F.  An Award of actual and punitive damages against all Defendants to CARANDANG on the Sixth Cause of Action in an amount to be determined at trial.

G.  An Award of actual and punitive damages against all Defendants to CARANDANG and ROSARIO on the Seventh Cause of Action in an amount to be determined at trial.

H.  An Award of actual and punitive damages against all Defendants to CARANDANG on the Eighth, Ninth and Tenth Causes of Action.

I.  Pre-judgment interest and attorneys' fees;

J.  Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
        August 8, 2012

                                        Respectfully submitted,


                                        GARBARINI FITZGERALD P.C.

                                        By: _____
                                        Richard M. Garbarini (RG 5496)
                                        rgarbarini@garbarinilaw.com
                                        Thomas FitzGerald (TF 2426)
                                        tfitzgerald@garbarinilaw.com
                                        Latrisha Desrosiers
                                        ldesrosiers@garbarinilaw.com
                                        420 Lexington Ave.
                                        Suite 2743
                                        New York, New York 10170
                                        Telephone: (212) 300-5358
                                        Facsimile: (888) 265-7054


                                        *Attorneys for Plaintiffs*

**Exhibit A**

**(e-mail from LAURA dated June 8, 2011 to CARANDANG)**

Zocalo Zocalo< zocalo10028@gmail.com>

## 13th st and 82nd st

7 messages

**Lshapiro1215@gmail.com**< lshapiro1215@gmail.com>                 Wed, Jun 8, 2011 at 6:12 PM
To: Alexandra Shapiro <alexandrashapiro@gmail.com>, Josaphat Rodriguez <josephatflex@gmail.com>,
Zocalo Zocalo <zocalo10028@gmail.com>, daddy <bobbyshapiro@gmail.com>

  These are people whose checks are in need of adjustment with deductions etc.

  Juan carlos moreno catorce. Married 6
  John carlo romano selgado. Married 7

  Check rumaldo gervacio for deductions. Change if too low to married 5
   Carlos moreno mejia missing ss number. Get his ID
  JEAN CARLO ROMANO SELGADO MISSING SS NUMBER

  What are alvaros deductions.? His taxes are high also


  No more overtime for pastry!!

  82nd st
  Jody manor has two checks in one week.  Why??

  Fernando vasquez. Change deductions to married 5




  Sent from my iPadm


**Zocalo Zocalo** < zocalo10028@gmail.com>                        Wed, Jun 8, 2011 at 6:47 PM
To: "Lshapiro1215@gmail.com" <lshapiro1215@gmail.com>
Cc: Alexandra Shapiro <alexandrashapiro@gmail.com>, Josaphat Rodriguez <josephatflex@gmail.com>,
daddy <bobbyshapiro@gmail.com>

  These changes will be reflected in the payroll report that will come out this Friday.

**Alexandra Shapiro**< alexandrashapiro@gmail.com>                    Thu, Jun 9, 2011 at 1:07 AM
To: Zocalo Zocalo <zocalo10028@gmail.com>

Thanks!!

**Robert Shapiro**< bobbyshapiro@gmail.com>                    Thu, Jun 9, 2011 at 8:38 AM
To: Zocalo Zocalo <zocalo10028@gmail.com>
Cc: "Lshapiro1215@gmail.com" <lshapiro1215@gmail.com>, Alexandra Shapiro
<alexandrashapiro@gmail.com>, Josaphat Rodriguez <josephatflex@gmail.com>

These changes and any more that we find will go back retroactively. This is Gilbert's last payroll and I
expect that Joe, Alex and Brookes work with Gilbert to input so they learn. In addition, Alex will teach Joe
and Shosh how to input invoices so they are up and running by Monday. No excuses. None

Sent from my iPad

**Zocalo Zocalo** < zocalo10028@gmail.com>                    Fri, Jun 10, 2011 at 5:01 PM
To: "Lshapiro1215@gmail.com" <lshapiro1215@gmail.com>
Cc: Alexandra Shapiro <alexandrashapiro@gmail.com>, Josaphat Rodriguez <josephatflex@gmail.com>,
daddy <bobbyshapiro@gmail.com>

Hi,
all filing status changes have been effected retroactively (for both uptown and downtown) and will get a
report showing that.

Gilbert

On Wed, Jun 8, 2011 at 6:12 PM,                    <                    > wrote:

**Lshapiro1215@gmail.com**< lshapiro1215@gmail.com>                    Fri, Jun 10, 2011 at 6:58 PM
To: Zocalo Zocalo <zocalo10028@gmail.com>

How far retro?

Sent from my iPad

**Zocalo Zocalo**< zocalo10028@gmail.com>                    Fri, Jun 10, 2011 at 7:11 PM
To: "Lshapiro1215@gmail.com" <lshapiro1215@gmail.com>

For this Quarter, starting April because the first quarter has already been filed with the state and the feds

**Exhibit B**

**(October 18, 2011 e-mail from Richard Feldman)**

**Richard Garbarini**

| | |
|---|---|
| **From:** | Richard Feldman [Rfeldman@rfs-law.com] |
| **Sent:** | Tuesday, October 18, 2011 4:20 PM |
| **To:** | Richard Garbarini |
| **Subject:** | RE: Robert Shapiro and Zocalo/Flex Mussels/When Its Chili Its Hot |

Rich:

Our client is investigating the allegations that you have raised and we expect to respond to your inquiry shortly. That said, if your client is aware of or is in possession of any records or files that have been requested but not yet produced as part of the ongoing audit, please advise so that they can be provided expeditiously.

Thanks.

Richard

---

**From:** Richard Garbarini [mailto:rgarbarini@garbarinilaw.com]
**Sent:** Thursday, October 13, 2011 5:05 PM
**To:** Richard Feldman
**Subject:** Robert Shapiro and Zocalo/Flex Mussels/When Its Chili Its Hot

Richard,

You may recall, we were the attorneys in the Bernitt and Espejo matters against Flex Mussels. You previously defended Mr. Shapiro and the various business in which he is a partner. We have a new matter involving former bookkeeper Gilbert Carandang's wrongful termination. The matter involves allegations of insurance fraud and the instructions by Mr. Shapiro to change time-records. Rather than file a Complaint, I think it would be best if we discuss this matter; it is very messy. Also, I understand Mr. Shapiro would like Mr. Carandang to assist in the current federal and sate audits, which we can discuss.

**Richard M. Garbarini, Esq.**
Garbarini Law Group P.C.
501 Fifth Avenue
Suite 1708
New York, NY 10017
Office : 212.300.5358
Direct Line : 212.300.3164
Fax : 888.265.7054
www.garbarinilaw.com
*certa bonum certamen*

CONFIDENTIALITY NOTE -- THIS E-MAIL TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this transmission is NOT the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the Garbarini Law Group immediately by telephone at 212.300.5358 and delete this message from your system.

CONFIDENTIALITY NOTICE: This e-mail is the exclusive private, confidential, and privileged property of the sender. The information contained in it is intended solely for the use of the sender and the intended recipient. If you are not the intended recipient, you are hereby advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this message is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone and then destroy this document and any copies in any form immediately. NOTE: Although reasonable precautions have been taken to ensure that no viruses are present in this e-mail, Rosenberg Feldman Smith LLP cannot accept responsibility for any loss or damage caused by receiving, reading, and forwarding etc., this e-mail.

**Exhibit C**

**(e-mail from Richard Feldman dated October 20, 2011, to Richard Garbarini)**

**Richard Garbarini**

| | |
|---|---|
| **From:** | Richard Feldman [Rfeldman@rfs-law.com] |
| **Sent:** | Thursday, October 20, 2011 5:24 PM |
| **To:** | rgarbarini@garbarinilaw.com |
| **Cc:** | Stephen Rosenberg |
| **Subject:** | FW: Robert Shapiro and Zocalo/Flex Mussels/When Its Chili Its Hot |

**SUBJECT TO FRE 408, FOR SETTLEMENT PURPOSES ONLY**

Rich:

We are still waiting for a response from you as to whether your client has any documents responsive to the audit requests, and if so, when he will provide them. Please urge him to search for and provide them as soon as possible as time is of the essence. Our client is not aware of any of these supposed refusals referred to in your email and specifically denies that this was the reason for the termination of his employment.

Our client has been investigating your client's issuance and signing of checks from our client's business accounts. Checks for significant amounts were made out by him to cash or to himself and our client is reviewing whether these funds were properly deposited into the companies' bank accounts. We will advise you of the results of our client's investigation as soon as they are concluded. If your client has any information concerning this issue, we would of course appreciate his disclosure.

Richard

---

**From:** Richard Garbarini [mailto:rgarbarini@garbarinilaw.com]
**Sent:** Tuesday, October 18, 2011 7:15 PM
**To:** Richard Feldman
**Cc:** Thomas FitzGerald
**Subject:** RE: Robert Shapiro and Zocalo/Flex Mussels/When Its Chili Its Hot

**SUBJECT TO FRE 408, FOR SETTLEMENT PURPOSES ONLY**

Rich:

I will call him immediately and ask. I agree, any documents necessary for the audit, if any, will be returned as soon as possible.

There is, however, not much "investigation" needed in this matter. As a matter of law Gilbert is not a 1099 employee, but we don't need to get there, he wasn't paid as an employee. That argument is not even worth pursuing further. Mr. Shapiro is well aware of the circumstances surrounding his refusal to certify false business records to the DOL, the refusal to pay vendor's as part of insurance fraud and the refusal to certify documents were lost in a fire that were not.

Our offer to settle this matter reasonably and amicably for six months severance will remain open until Friday, October 21, 2011 at 3:00pm.

**Richard M. Garbarini, Esq.**
Garbarini Law Group P.C.
501 Fifth Avenue

1

Suite 1708
New York, NY 10017
Office : 212.300.5358
Direct Line : 212.300.3164
Fax : 888.265.7054
www.garbarinilaw.com
*certa bonum certamen*

CONFIDENTIALITY NOTE -- THIS E-MAIL TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this transmission is NOT the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the Garbarini Law Group immediately by telephone at 212.300.5358 and delete this message from your system.

-------- Original Message --------
Subject: RE: Robert Shapiro and Zocalo/Flex Mussels/When Its Chili Its Hot
From: Richard Feldman <Rfeldman@rfs-law.com>
Date: Tue, October 18, 2011 4:19 pm
To: Richard Garbarini <rgarbarini@garbarinilaw.com>

Rich:

Our client is investigating the allegations that you have raised and we expect to respond to your inquiry shortly.  That said, if your client is aware of or is in possession of any records or files that have been requested but not yet produced as part of the ongoing audit, please advise so that they can be provided expeditiously.

Thanks.

Richard

---

**From:** Richard Garbarini [mailto:rgarbarini@garbarinilaw.com]
**Sent:** Thursday, October 13, 2011 5:05 PM
**To:** Richard Feldman
**Subject:** Robert Shapiro and Zocalo/Flex Mussels/When Its Chili Its Hot

Richard,

You may recall, we were the attorneys in the Bernitt and Espejo matters against Flex Mussels.  You previously defended Mr. Shapiro and the various business in which he is a partner.  We have a new matter involving former bookkeeper Gilbert Carandang's wrongful termination.  The matter involves allegations of insurance fraud and the instructions by Mr. Shapiro to change time-records.  Rather than file a Complaint, I think it would be best if we discuss this matter; it is very messy.  Also, I understand Mr. Shapiro would like Mr. Carandang to assist in the current federal and sate audits, which we can discuss.

**Richard M. Garbarini, Esq.**
Garbarini Law Group P.C.
501 Fifth Avenue
Suite 1708
New York, NY 10017
Office : 212.300.5358
Direct Line : 212.300.3164
Fax : 888.265.7054
www.garbarinilaw.com
*certa bonum certamen*

CONFIDENTIALITY NOTE -- THIS E-MAIL TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this transmission is NOT the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the Garbarini Law Group immediately by telephone at 212.300.5358 and delete this message from your system.

CONFIDENTIALITY NOTICE: This e-mail is the exclusive private, confidential, and privileged property of the sender. The information contained in it is intended solely for the use of the sender and the intended recipient. If you are not the intended recipient, you are hereby advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this message is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone and then destroy this document and any copies in any form immediately.
NOTE: Although reasonable precautions have been taken to ensure that no viruses are present in this e-mail, Rosenberg Feldman Smith LLP cannot accept responsibility for any loss or damage caused by receiving, reading, and forwarding etc., this e-mail.

CONFIDENTIALITY NOTICE: This e-mail is the exclusive private, confidential, and privileged property of the sender. The information contained in it is intended solely for the use of the sender and the intended recipient. If you are not the intended recipient, you are hereby advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this message is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone and then destroy this document and any copies in any form immediately.
NOTE: Although reasonable precautions have been taken to ensure that no viruses are present in this e-mail, Rosenberg Feldman Smith LLP cannot accept responsibility for any loss or damage caused by receiving, reading, and forwarding etc., this e-mail.

**Exhibit D**

**(e-mail from Richard Feldman dated December 8, 2011, to Richard Garbarini)**

**Richard Garbarini**

| | |
|---|---|
| **From:** | Richard Feldman [Rfeldman@rfs-law.com] |
| **Sent:** | Thursday, December 08, 2011 12:15 PM |
| **To:** | Richard Garbarini |
| **Cc:** | Stephen Rosenberg |
| **Subject:** | FW: Gabaraini |

Dear Mr. Garbarini:

In response to your most recent emails, our client is conducting an audit to ascertain whether and to what extent unauthorized funds may have been taken by Mr. Carandang and if any blank checks are missing. This has been time consuming since not only were bank statements and cancelled checks missing but the records of the restaurants involved were not properly kept by your client. As you may be aware, we understand that your client was previously convicted of embezzlement by a former employer. Our client is investigating whether he has engaged in similar conduct with respect to it. Once it is determined whether any embezzlement has occurred and what amounts if any were taken, you may be assured appropriate action will be taken. Your repeated threats of criminal and civil action are noted.

In addition, your client was not an employee but an independent contractor.

I will be out of the office for the next two weeks so in my absence, please communicate with my partner, Stephen Rosenberg.

Richard Feldman

CONFIDENTIALITY NOTICE: This e-mail is the exclusive private, confidential, and privileged property of the sender. The information contained in it is intended solely for the use of the sender and the intended recipient. If you are not the intended recipient, you are hereby advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this message is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone and then destroy this document and any copies in any form immediately. NOTE: Although reasonable precautions have been taken to ensure that no viruses are present in this e-mail, Rosenberg Feldman Smith LLP cannot accept responsibility for any loss or damage caused by receiving, reading, and forwarding etc., this e-mail.

1

# Exhibit E

# (copy of the criminal complaint)

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 1 of 2

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Gilbert Carandang (M 38)      ECAB #
                                 1296004

                                 Defendant.

FELONY
ADA APPELBAUM
212-335-4077

Police Officer William Massi, shield 14640 of the 006 Detective Squad, states as follows:

On February 1, 2011, at about 12:00 hours at 154 WEST 13 ST  NYC, NY in the County and State of New York, the Defendant committed the offenses of:

1.   PL155.40(1)    Grand Larceny in the Second Degree
                    (1 count)
2.   PL190.80(4)    Identity Theft in the First Degree
                    (1 count)
3.   PL190.80(3)    Identity Theft in the First Degree
                    (1 count)
4.   PL170.25       Criminal Possession of a Forged Instrument in the Second Degree
                    (1 count)

the defendant stole property valued in excess of 50,000 dollars; the defendant, knowingly and with intent to defraud, assumed the identity of another person by presenting the defendant as that other person, and by acting as that other person and committed the crime of identity theft in the second degree as defined in section 190.79 of this article and has been previously convicted within the last five years of identity theft in the third degree as defined in PL 190.78, identity theft in the second degree as defined in PL 190.79, identity theft in the first degree as defined in PL 190.80, unlawful possession of personal identification information in the third degree as defined in PL 190.81, unlawful possession of personal identification information in the second degree as defined in PL 190.82, unlawful possession of personal identification information in the first degree as defined in PL 190.83, grand larceny in the fourth degree as defined in PL 155.30, grand larceny in the third degree as defined in PL 155.35, grand larceny in the second degree as defined in PL 155.40, and grand larceny in the first degree as defined in PL 155.42; the defendant, knowingly and with intent to defraud, assumed the identity of another person by presenting the defendant as that other person, and by acting as that other person and by using personal identifying information of that other person, and thereby committed

LAS #  B:15

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 2 of 2

| THE PEOPLE OF THE STATE OF NEW YORK | FELONY |
|---|---|

-against-

ADA APPELBAUM
212-335-4077

1. Gilbert Carandang (M 38)     ECAB #
                                 1296004

Defendant.

and attempted to commit a class D felony and higher level crime and acted as an
accessory in the commission of a class D and higher level felony; and the defendant
uttered and possessed a forged instrument of a kind specified in section 170.10 of the
Penal Law and particularized below with knowledge that the instrument was forged and
with intent to defraud, deceive and injure another.

The offenses were committed under the following circumstances:

Deponent states that he is informed by Laura Shapiro, the owner of three (3)
restaurants all located in New York County, that informant hired defendant as a
bookkeeper in February 2010.

Deponent states that he is further informed by informant that after a review of the
books and records for informant's company, including but not limited to checks drawn on
the company account, that between February 2010 and October 2011, approximately one
hundred and fifty (150) checks drawn on the company account were all made payable to
the defendant.

Deponent is further informed by informant that the amount of said checks was in
excess of $50,000 and that defendant did not have permission or authority to take any of
those funds.

Deponent is further informed by informant that said checks had fraudulent
signatures that purported to be from three of the signators on the account and which after
examinination were not in fact their signatures. Deponent is informed by informant that
defendant did not have permission and authority to use the names and personal
identifying information of the account signators.

Deponent further states that he has reviewed the defendant's criminal history and
the defendant has been previously convicted on Grand Larceny in the Third Degree
within the last five years.

False statements made herein are punishable as a class A misdemeanor pursuant to
section 210.45 of the penal law.

_____                    12/21/11    2325
Deponent                                   Date and Time

ACT 5 Version 4.3.5 Created on 12/21/11 9:54 PM

**Exhibit F**

**(e-mail from ROBERT to CARANDANG dated June 2, 2010)**

Zocalo Zocalo< zocalo10028@gmail.com>

# Shapiro

**Robert Shapiro**< bobbyshapiro@gmail.com>                    Wed, Jun 2, 2010 at 2:47 PM
To: Zocalo Zocalo <zocalo10028@gmail.com>

Hi,

We need to print out a check register so I can explain where these numbers go.

The 42k is not rent expense because 31.5 is for deposit, for example.

# 1001 is for Christine Restaino 4000.00 architectural fees.
#1002 is for Baltz for PR fees for 4500.00

Print a check register and we will go through it.

We need a check for Christine Restaino for 3280 for architectural fees
A check for 1000.00 to Dashmor Kengu, air conditioning.

Thank you,

Bobby

**Exhibit G**

**(e-mail from ALEXANDRA dated May 14, 2010 to CARANDANG)**

# Re: just asking

| | |
|---|---|
| From: | alexandrashapiro@gmail.com |
| To: | Zocalo Zocalo <zocalo10028@gmail.com> |
| Date: | Fri, 14 May 2010 10:54:30 -0400 |

Just fake my signature

Sent from my Verizon Wireless BlackBerry

From: Zocalo Zocalo <zocalo10028@gmail.com>
Date: Fri, 14 May 2010 10:52:41 -0400
To: Alex Shapiro<alexandrashapiro@gmail.com>
Subject: just asking

are you around?
Your mom wants me to move $3k to her bank acct and I need a signatory.

Let me know please.  Thanks!

---------- Forwarded message ----------
From: <lauras000@aol.com>
Date: Fri, May 14, 2010 at 5:37 AM
Subject: Laura
To: zocalo10028@gmail.com


Hi Gilbert-Bobby's mom had a stroke and we all went to Florida for a few days.

My cell is 646-554-8000, and Bobby's is 917-482-8900.
Do not hesitate to call us.

Please put $3000.00 in my bank acct today to cover checks I have outstanding.

My acct is 7916284875.

Thanks, and we'll speak later.

Laura

--
Gilbert
tel# 212-717-7772
fax: 212-717-0246
email: zocalo10028@gmail.com

**Exhibit H**

**(May 20, 2010 e-mail from ALEXANDRA to CARANDANG)**

## Re: Check for taxes

| | |
|---|---|
| From: | alexandrashapiro@gmail.com |
| To: | Zocalo Zocalo <zocalo10028@gmail.com> |
| Date: | Thu, 20 May 2010 16:13:03 -0400 |

Forge dads sig. None of us will be there

Sent from my Verizon Wireless BlackBerry

From: Zocalo Zocalo <zocalo10028@gmail.com>
Date: Thu, 20 May 2010 16:07:25 -0400
To: Robert Shapiro<bobbyshapiro@gmail.com>; Laura Shapiro<lauras000@aol.com>; Alex Shapiro<alexandrashapiro@gmail.com>
Subject: Check for taxes

Hi,
need to know who's coming to sign the sales tax report to be filed
and to sign the check payment.
I need to be at the post office before 5pm.


--
Gilbert
tel# 212-717-7772
fax: 212-717-0246
email: zocalo10028@gmail.com

**Exhibit I**

**(e-mails between CARANDANG and ROBERT dated April 9, 22, 27, and 28, 2010)**

# Fed 941/940

From:    Zocalo Zocalo <zocalo10028@gmail.com>

To:      Robert Shapiro <bobbyshapiro@gmail.com>, Laura Shapiro <lauras000@aol.com>

Date:    Fri, 09 Apr 2010 12:59:02 -0400

4/9/2010
GC has $50k available balance while Flex has $24k.
Im about to pay Fed 941/940 $5k now unless you say something otherwise today.

Thanks!

# [No Subject]

| | |
|---|---|
| From: | Robert Shapiro <bobbyshapiro@gmail.com> |
| To: | Zocalo Zocalo <zocalo10028@gmail.com> |
| Date: | Thu, 22 Apr 2010 10:42:13 -0400 |

Paid $30.00 for delivery of the lease and 12.00 for paper... book it

## Re: IRS

| | |
|---|---|
| From: | Robert Shapiro <bobbyshapiro@gmail.com> |
| To: | Zocalo Zocalo <zocalo10028@gmail.com> |
| Date: | Tue, 27 Apr 2010 21:06:32 -0400 |

how much is left?

we should definitely make a payment. Don't forget p/r and amex.

Bobby

On Tue, Apr 27, 2010 at 6:10 PM, Zocalo Zocalo <zocalo10028@gmail.com> wrote:
> If our average daily balance continues to be around $35k again by tomorrow, I am paying another
> $5k for our 941.
> unless you tell me otherwise.
>
> Thanks!
>
> --
> Gilbert
> tel# 212-717-7772
> fax: 212-717-0246
> email: zocalo10028@gmail.com

# IRS

| | |
|---|---|
| From: | Zocalo Zocalo <zocalo10028@gmail.com> |
| To: | Robert Shapiro <bobbyshapiro@gmail.com> |
| Cc: | Laura Shapiro <lauras000@aol.com>, Alex Shapiro <alexandrashapiro@gmail.com> |
| Date: | Wed, 28 Apr 2010 11:38:13 -0400 |

I sent you the email below long time ago.
after this april 16 email, I paid another $5,134.60 on 4/21/2010
I paid today another $5,134.60 leaving us with less than $3k in liability.

I paid another $1k for our NYS sales tax liab.


---------- Forwarded message ----------
From: Zocalo Zocalo <zocalo10028@gmail.com>
Date: Fri, Apr 16, 2010 at 12:29 PM
Subject: Issues
To: Robert Shapiro <bobbyshapiro@gmail.com>, Laura Shapiro <lauras000@aol.com>


Hi Bobby/ Laura,

Here's an update on the following issues:

-------------------------

Today we need to pay the 5k to the feds (for Flex) and we should be on our way.  (as per Bobby)
$2,000    the only payment I can confirm that was paid before I came to Flex
$5,000    payment we made on Feb 25, 2010 through compupay but there's a caveat on that - please see below email from Compupay
$5,000    wire transfer made at the bank by Laura
$5,000    first EFTPS online payment I made on 4/12 - money came from GC
$5,000    second EFTPS online payment I made on 4/14 - money came from GC again
--------------
$27,000   total made so far for our Form 941/940 2Q 2009.  Out of the $40k that we owe, we need to pay $13k more.

**Exhibit J**

**(e-mail from CARANDANG to ROBERT dated August 31, 2010)**

## Re: Original Quote and Statement of Work

| | |
|---|---|
| From: | Zocalo Zocalo <zocalo10028@gmail.com> |
| To: | bobbyshapiro@gmail.com |
| Date: | Tue, 31 Aug 2010 14:33:45 -0400 |

what??? I wouldn't buy anything without your authorization.

On Tue, Aug 31, 2010 at 2:03 PM, bobbyshapiro@gmail.com <bobbyshapiro@gmail.com> wrote:

> Did we buy?
>
> Se
> nt from my Verizon Wireless Phone
>
> ----- Reply message -----
> From: "Zocalo Zocalo" <zocalo10028@gmail.com>
> Date: Tue, Aug 31, 2010 1:40 pm
>
> Subject: Original Quote and Statement of Work
> To: "Robert Shapiro" <bobbyshapiro@gmail.com>
>
>
> ---------- Forwarded message ----------
> From: Sordoni Lorenzo <LSordoni@pcconnection.com>
> Date: Tue, Aug 31, 2010 at 1:19 PM
> Subject: Original Quote and Statement of Work
> To: Zocalo Zocalo <zocalo10028@gmail.com>
>
>
> Gilbert,
>
>
> I have attached the original quote and install paperwork to this e-mail.
>
>
> Sandra has informed me that this will still allow you to dial out to the
> other locations and transfer the call and have the voicemail feature.
>
>
> She is checking to see the future flexibility in expanding to the features
> Paul had discussed on his quote.
>
>
> Lorenzo

* *

* *

* *

*Lorenzo J. Sordoni III*

Account Manager

Health Connection Certified
*PC Connection*
*IT Solutions for Business*
lsordoni@pcconnection.com
Phone:  800-800-0014  x76164
www.pcconnection.com

--
Gilbert
tel# 212-229-9499
fax: 917-591-6839 / 212-229-9199/ 212-717-0246
email: zocalo10028@gmail.com

--
Gilbert
tel# 212-229-9499
fax: 917-591-6839 / 212-229-9199/ 212-717-0246
email: zocalo10028@gmail.com

**Exhibit K**

**(signed receipts for the cash to Ira Garr)**



917-203-9948 . cell
212-750-1333 - offic.

MARCH 10, 2010

Bean Persaud

RECEIVED FIVE HUNDRED CASH

(7 MARCH 2010

RECEIVED FIVE HUNDRED CASH

Sean Ganesh Persaud

25 MARCH 2010

RECEIVED FIVE HUNDRED CASH

Ramganesh Persaud

SEAN P___

30 MARCH 2010

RECEIVED FIVE HUNDRED CASH

Sean Ganesh Persaud

SEAN Persaud Jc.

6 APRIL 2010

RECEIVED FIVE HUNDRED CASH

Seanganesh Persaud

16 APRIL 2010

RECEIVED FIVE HUNDRED CASH

Sean Ganesh Persaud

SEAN Persaud Jr.

APRIL 22, 2010.

RECEIVED ONE THOUSAND CASH

*April 29, 2010*

This document certified that Mr. *Jean Poissand* have

receive $500 dollars in cash as representative of Mr. Ira Garr

MAY 14, 2010

RECEIVED FIVE HUNDRED CASH

Sean Ganesh Persaud

May 21, 2010

This document certified that Mr. _Sean Peisaud_ have

receive $500 dollars in cash as representative of Mr. Ira Garr

June 1, 2010

Sean Persaud

This document certified that Mr. _____ have

receive $500 dollars in cash as representative of Mr. Ira Gerr

June 7, 2010

This document certified that Mr. *Scanfest* have receive $500 dollars in cash as representative of Mr. Ira Garr

June 14, 2010

This document certified that Mr. _____ have

receive $500 dollars in cash as representative of Mr. Ira Garr

June 25, 2010

This document certified that Mr. ~~franli B. C. Fi-~~

receive $500 dollars in cash as representative of Mr. Ira Garr

July 2, 2010

This document certified that Mr. _____ have

receive $500 dollars in cash as representative of Mr. Ira Garr

July 8, 2010

This document certified that Mr. _Sean Peters_ for have

receive $500 dollars in cash as representative of Mr. Ira Garr

July 15, 2010

This document certified that Mr. _____ have

receive $500 dollars in cash as representative of Mr. Ira Garr

JULY 29, 2010

RECEIVED FIVE HUNDRED CASH

AUGUST. 6, 2010

RECEIVED FIVE HUNDRED ($500) CASH

Seanganesh Persaud

August 12, 2010

RECEIVED FIVE HUNDRED CASH

SEAN

AUGUST 20, 2010

RECEIVED FIVE HUNDRED CASH

Seanganesh Persaud

AUGUST 27, 2010

RECEIVED FIVE HUNDRED CASH

Sean Paul

SEPTEMBER 3, 2010.

RECEIVED FIVE HUNDRED CASH

SEPTEMBER 8, 2010

RECEIVED FIVE HUNDRED CASH

SEAN

SEPTEMBER 15, 2010

RECEIVED   FIVE HUNDRED CASH

Sean Post

September 20, 2010

Received five hundred dollars cash.

Ganesh Persaud

SEPTEMBER 23, 2010

RECEIVED
FIVE HUNDRED CASH

*[signature]*

September 27, 2010

Received five hundred dollars cash.    *Ganesh Persaud*

*Ganesh Persaud Jr*

SEPTEMBER 30, 2010

RECEIVED   FIVE  HUNDRED  CASH

OCTOBER 4, 2010

RECEIVED FIVE HUNDRED CASH

October 13, 2010

RECEIVED FIVE HUNDRED DOLLARS CASH

*Sean Persaud,*
*from Ira E. Garr*

SIGNATURE

PRINTED NAME

OCTOBER 21, 2010
"RECEIVED" FIVE HUNDRED CASH

Sean Paul

27 OCTOBER 2010

RECEIVED FIVE HUNDRED DOLLARS CASH

Bean persaud

NOVEMBER 16, 2010

RECEIVED FIVE HUNDRED CASH

SEAN Pcol J, —

NOVEMBER 23, 2010

RECEIVED FIVE HUNDRED CASH

Sean Persaud                    11/26/10

RECEIVED. FIVE HUNDRED

_SEAN_

DECEMBER 9, 2010

RECEIVED FIVE HUNDRED CASH

SEAN PENN

RECEIVED FIVE HUNDRED

CASH

DECEMBER 29, 2010

RECEIVED FIVE HUNDRED CASH

Seanganesh Persaud

6 JANUARY 2011

RECEIVED  FIVE HUNDRED CASH

JANUARY 13, 2011

RECEIVED FIVE HUNDRED CASH

Sean Pettit

JANUARY 18, 2011

RECEIVED ONE THOUSAND CASH

1/21/2011

RECEIVED FIVE HUNDRED CASH

Beanganesh Perfsaud

1/28    Sean persaud

RECEIVED    FIVE HUNDRED    CASH

FEBRUARY 25, 2011

RECEIVED ONE THOUSAND CASH

MARCH 11, 2011

RECEIVED ONE THOUSAND CASH

APRIL 11, 2011

RECEIVED FIVE HUNDRED CASH

**Exhibit L**

**(June 23, 2010 e-mail from LAURA)**



Zocalo Zocalo <zocalo10028@gmail.com>

# (no subject)

1 message

---

**lauras000@aol.com <lauras000@aol.com>**          **Wed, Jun 23, 2010 at 9:56 AM**
To: zocalo10028@gmail.com

---

$1000.00 paid out of Flex on 6/29 for citibank card.  Owe $7000 and want to pay it off.
$300 out today for card on which I owe 9000.00

I'm trying, Gilbert!!!

SHHHHHHH!!

---

# Exhibit M

## (e-mail dated June 30, 2010 from ALEXANDRA to CARANDANG)

# [No Subject]

| | |
|---|---|
| From: | Alex Shapiro <alexandrashapiro@gmail.com> |
| To: | Zocalo Zocalo <zocalo10028@gmail.com> |
| Date: | Wed, 30 Jun 2010 23:29:00 -0400 |

hi gilbert

please transfer 1000 from flex into my account #7915981364

its for my rent@!!!

also... direct deposit??

**Exhibit N**

**(e-mail dated August 30, 2010 from LAURA to CARANDANG)**

# Re: deposit

| | |
|---|---|
| From: | lauras000@aol.com |
| To: | zocalo10028@gmail.com |
| Date: | Mon, 30 Aug 2010 10:27:05 -0400 |

Thanks, my friend!

-----Original Message-----
From: Zocalo Zocalo <zocalo10028@gmail.com>
To: Laura Shapiro <lauras000@aol.com>
Sent: Mon, Aug 30, 2010 10:19 am
Subject: deposit

$3k was deposited to your account this morning.

--
Gilbert
tel# 212-229-9499
fax: 917-591-6839 / 212-229-9199/ 212-717-0246
email: zocalo10028@gmail.com

**Exhibit O**

**(e-mail from LAURA to CARANDANG dated March 24, 2011)**



Zocalo Zocalo< zocalo10028@gmail.com>

## Money

2 messages

---

**Laura Shapiro** < lauras000@aol.com>                                    Thu, Mar 24, 2011 at 9:47 AM
To: Zocalo Zocalo <zocalo10028@gmail.com>

Hi Gilbert,
Please transfer $2500 into my acct in pei from grand central. Td has template.

Also, need money in acct here please.
Thanks

Laura

Sent from my iPad

---

**Zocalo Zocalo**< zocalo10028@gmail.com>                                 Thu, Mar 24, 2011 at 9:54 AM
To: Marco Andrade <marco11369@yahoo.com>

---------- Forwarded message ----------
From: **Laura Shapiro** <lauras000@aol.com>
Date: Thu, Mar 24, 2011 at 9:47 AM
Subject: Money
To: Zocalo Zocalo zocalo10028@gmail.com

Please transfer $2500 into my acct in pei from grand central. Td has template.
Thanks

Laura

Sent from my iPad


--
Gilbert
tel# 212-229-9499 (Mondays to Fridays, 2pm to 4pm only)
fax: 917-591-6839
email: zocalo10028@gmail.com
Flex Mussels at East 82nd Street
Grand Central Zocalo
Flex Mussels at West 13th Street

**Exhibit P**

**(e-mail from Josaphat Rodriguez, Manager of Flex Uptown dated February 9, 2011)**



Zocalo Zocalo <zocalo10028@gmail.com>

# Luis Iglesis
1 message

**Josaphat Rodriguez <josephatflex@gmail.com>**                    **Wed, Feb 9, 2011 at 3:57 PM**
To: Zocalo Zocalo <zocalo10028@gmail.com>

He has two Checks that bounced, I have them here both. I'm going to cashed them on my name and give him the cash. I'll send you the amount latter

**Exhibit Q**

**(e-mail from ALEXANDRA dated November 5, 2010)**

Gmail - (no subject)                                                                        https://mail.google.com/mail/?ui=2&ik=49922407cd&view=pt&q=ale



Zocalo Zocalo <zocalo10028@gmail.com>

## (no subject)

**Alex Shapiro** <alexandrashapiro@gmail.com>                                        Fri, Nov 5, 2010 at 5:05 PM
To: Zocalo Zocalo <zocalo10028@gmail.com>

hi!!! do you have the addresses for rafael the dude suing us and for ricky the line cook uptown?

im gonna call immigration mooohahahahahahahahahahahah