UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| GILBERT CARANDANG and MARIA ROSARIO CARANDANG, | : <br> : |
| Plaintiffs, | : <br> : |
| - against - | : <br> : |
| ROBERT SHAPIRO, LAURA SHAPIRO, ALEXANDRA SHAPIRO, WHEN IT'S CHILE IT'S HOT, INC. d/b/a FLEX MUSSELS, PEI MUSSEL KITCHEN, LLC d/b/a FLEX MUSSELS, GRAND CENTRAL ZOCALO, LLC d/b/a ZOCALO, CITY OF NEW YORK and POLICE OFFICER WILLIAM MASSI, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 30, 2013

12 Civ. 5634 (PAC)

OPINION & ORDER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

      This action arises out of an overtime compensation dispute between Plaintiff Gilbert Carandang, a former employee, and Defendants, restaurant owners Robert Shapiro, Laura Shapiro, Alexandra Shapiro, and their restaurants Flex Mussels and Zocalo. Carandang alleges that the Defendants failed to pay him for overtime in violation of the FLSA and New York labor laws. Plaintiff also asserts that he was subjected to a hostile work environment under Title VII arising from Robert Shapiro's inappropriate physical touching and verbal harassment. When Carandang sued to recover his unpaid overtime, he alleges that Defendants immediately

1

retaliated against him by falsely accusing him of stealing restaurant funds.[1]  Carandang was arrested and spent six days in jail before the charges were finally dismissed seven months later.[2]

Further, Carandang asserts state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress against the Defendants for their allegedly false and malicious criminal accusations.  Mr. Carandang's wife, Maria Rosario Carandang, asserts a negligent infliction of emotional distress claim as well for emotional harm arising out of her husband's arrest and the police's subsequent search of their residence.  The Defendants move to dismiss these emotional distress claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[3]  For the following reasons, the Defendants' motion is denied.

## FACTS

Flex Mussels and Zocalo are casual dining restaurants, owned and operated by Robert, Laura and Alexandra Shapiro.  (TAC ¶¶ 2, 21-23.)[4]  Carandang started working at the restaurants on February 17, 2010 as a bookkeeper.  (Id. ¶¶ 75, 81.)  His responsibilities included data entry, managing online banking, keeping track of credit card and sales receipts and recording cash flow from each restaurant.  (Id. ¶¶ 111, 112.)  Carandang worked at the uptown FLEX location until approximately May of 2010, when he was transferred to FLEX's downtown location.  (Id. ¶ 87.)

---

[1] The overtime compensation case was initiated in 2011.  Carandang terminated these claims on January 17, 2012 while the criminal charges against him for check fraud were pending.  The labor law violations asserted therein have been reasserted in the Third Amended Complaint in this action.

[2] Plaintiffs also joined as defendants arresting officer Massi and the City of New York for false arrest and malicious prosecution.  The Court entered the parties' stipulation and order of partial dismissal on April 25, 2013 after Plaintiffs and the City defendants reached a settlement.  (Dkt. No. 47.)

[3] Defendants moved to dismiss the Second Amended Complaint on December 7, 2012.  (Dkt. Nos. 29, 34.)  On March 1, 2013, Plaintiffs filed a Third Amended Complaint.  (Dkt. 40.)  By letter dated March 5, 2013, Defendants noted that the changes were immaterial to the instant motion and declined to supplement their briefing.  The Court will deem Defendants' motion as one to dismiss the Third Amended Complaint.

[4] All references to TAC are to the Third Amended Complaint.

Wage and Hour Allegations

Carandang was paid $800 per week from February 25, 2010 through September 13, 2010, which amounted to $20 per hour for a forty-hour work week. (Id. ¶¶ 91-93, 95, 134.) Carandang's pay eventually increased to $1000 per week to reflect increased responsibilities. (Id. ¶ 95.) Carandang regularly worked in excess of 40 hours per week, however, including occasionally on Saturdays and work at home. (Id. ¶¶ 88, 90.) For a three week period in March and April 2010, Carandang worked for 55 to 60 hours per week, between 7:00 a.m. and 8:00 p.m., five days a week. (Id. ¶¶ 92, 93.) From May 2010 through October 2011, Carandang worked between 60 and 65 hours per week, from 8:30a.m. or 9:00 a.m. to approximately 8:00 p.m. (Id. ¶¶ 93, 95) For the additional hours worked, the Shapiros wrote Carandang a monthly check for approximately $1000, which Carandang contends inadequately accounts for overtime and spread-of-hours pay. (Id. ¶¶ 135-137.) Carandang further alleges a common practice at the restaurants of manipulating payroll reports to eliminate those hours worked by employees beyond forty per week. (Id. ¶¶ 117, 118.)

Hostile Work Environment

Mr. Carandang complains of verbal and physical harassment by Robert Shapiro, which began about a month after he was hired. Specifically, Mr. Shapiro ridiculed Carandang for being Catholic, commented that Carandang was "slow" and accustomed to "filth" because he was Filipino, denigrated his appearance by making comments about his face and "big butt," and made it acceptable for co-workers to harass Carandang. (Id. ¶¶ 141-148.) Carandang also contends that Mr. Shapiro touched and grabbed Carandang's bottom when the two were alone. (Id. ¶¶ 149-155.)

Retaliation and the Check Fraud Arrest

On September 26, 2011, Robert Shapiro fired Carandang and threatened to have him jailed if he filed a wage and hour complaint. (Id. ¶ 77.)[5] Defendants knew that Carandang previously served approximately two years in jail for embezzlement. (Id. ¶¶ 167-172.) On October 13, 2011, Carandang's attorney contacted Defendants' counsel to inform them of the alleged FLSA violations. (Id. ¶ 161.) Defendants' counsel responded a few days later with news of an investigation into Carandang's signing of checks for significant amounts from client business accounts. (Id. ¶ 163.) Carandang contends that these accusations were false and malicious, and calculated to pressure Plaintiff into withdrawing his FLSA claims, because Defendants authorized each and every check. (Id. ¶¶ 165, 166.) In particular, Robert, Laura, and Alexandra Shaprio routinely used FLEX corporate accounts to pay for personal expenses and costs of their unrelated business. (Id. ¶¶ 56-59, 66-70, 72, 214, 216.) At times, Laura requested that Carandang draw checks to himself from the restaurants, with the funds to be turned over to her in person or deposited into her personal checking account. (Id. ¶ 62.) It was a common practice that Defendants requested Carandang to forge their signatures in their absence. (Id. ¶¶ 207-209.)

On December 9, 2011, Carandang filed a charge with the Equal Employment Opportunity Commission ("EEOC") and a complaint in this Court for unpaid wages. (Id. ¶ 6.) Shortly thereafter, on December 21, 2011, Defendants made good on the prior threats by filing a criminal complaint against Carandang. The complaint was based on Laura's sworn statement and a spreadsheet purportedly showing that Carandang forged signatures on 150 checks totaling $50,000 made payable to himself. (Id. ¶¶ 177; Ex. F.) Carandang contends that at least some of checks were for to compensate him for his work. (Id. ¶ 182.) He used the remainder to pay

---

[5] The termination was effective October 7, 2011. (TAC ¶ 76.)

4

construction workers, who insisted on cash payments; Ira Garr, a former partner; and the Shapiros, for their personal expenses.  (Ex. G; Id. ¶¶ 184, 214, 219, 221.)  In all cases, the checks were authorized.  (Id. ¶¶ 179, 184.)  Any undetected theft, Plaintiff asserts, would have been a "complete impossibility," as Defendants carefully monitored the check registries and online banking statements.  (Id. ¶¶ 201-03.)

As soon as the complaint was filed, the police immediately arrested Carandang and he spent the next six days in jail because he could not make bail.  (Id. ¶ 190.)  On December 27, 2011, while Carandang was still incarcerated, the police executed a search warrant at his house.  (Id. ¶¶ 191, 192.)  Maria Rosario Carandang was present at both her husband's arrest and the subsequent search, and alleges that she was "traumatized and reduced to tears."  (Id. ¶ 194.)  After the arrest, Ms. Carandang began to suffer "chest pain, shortness of breath and rarely slept."  (Id. ¶ 198.)  On December 23, 2011, Ms. Carandang visited the hospital and was diagnosed with hypertension and prescribed medication.  (Id. ¶ 199.)  The criminal charges were dismissed on July 17, 2012.  (Id. ¶¶ 13, 252.)

Beyond arrest for check fraud, Carandang alleges that Defendants took further action to retaliate against him for his FLSA complaints by cancelling his payroll checks, and depriving him of unemployment benefits by falsely reporting that Carandang was dismissed for cause.  (Id. ¶¶ 228, 230.)

## DISCUSSION

Fed. R. Civ. P. 12(b)(6)  requires the court to "accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007); see Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  The court only "assess[es] the legal feasibility of the complaint"; it does not

"assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003).

    I.        Intentional Infliction of Emotional Distress (Count Six)

"The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993). Courts usually focus on the first element— whether the conduct at issue was sufficiently extreme and outrageous. Kraft v. City of New York, 696 F. Supp. 2d 403, 423 (S.D.N.Y. 2010). This conduct must "transcend[ ] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (N.Y. 1985).

Defendants do not contest that the conduct alleged could be sufficiently "extreme" and "outrageous" to maintain an IIED claim. The Complaint alleges that Robert Shapiro previously threatened Mr. Carandang that he should "expect to go back to jail" if Carandang filed any complaints against the Defendants. (TAC ¶ 77.) The Complaint accuses Defendants of initiating an allegedly false and malicious criminal case against Carandang on charges that they knew were false, for no purpose other than to punish Carandang for his wage and hour complaints. (Id. ¶¶ 163, 184, 186, 187, 188.) The Court concludes that this conduct, which the Court must accept as true for the purposes of the motion to dismiss, is "extreme" and "outrageous." Defendants contend that the City, the police, and/or Officer Massi, not the Defendants, were the proximate cause of Plaintiffs' distress. While the police and district attorney may be immune, that does not mean that the Shapiros should be immune as well. The Complaint adequately alleges conduct on the part of Defendants that was reasonably calculated to cause emotional distress, including

making misrepresentations to the police, the District Attorney's office, and a grand jury. (Id. ¶ 299.) At this stage of the proceeding, the Court finds that there are sufficient factual allegations to sustain this claim. Defendants argue that there was no threat to physical safety, but none is required to sustain a claim for intentional infliction of emotional distress. See Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993). The Defendants' motion to dismiss the claim of intentional infliction of emotional distress is denied.

    II.      Negligent Infliction of Emotional Distress (Count Seven)

While it is clear that there are well-pleaded allegations of intentional infliction of emotional distress, it is less than clear that the same conduct could be negligent. Nonetheless, Defendants' alleged conduct is so beyond the pale, complete with allegations of false criminal charges, favoritism by both the police and the prosecutor, and apparent misuse of the public office favoring Defendants, at the expense of the Plaintiffs' good names and reputations, that the Court is loathe to dismiss Count Seven based on Defendants' quibble about the absence of physical danger. If the allegations are proven to be true, there is no reason in law or logic why Defendants should be exempt from being called to account for their own behavior, and the conduct they initiated because of their alleged ability to utilize connections and influence to achieve an inappropriate, retaliatory purpose. Accordingly, the Court declines to dismiss this Count, without prejudice, to its renewal on a motion for summary judgment, after discovery has been taken and Plaintiffs have had a fair opportunity to prove their case.

## CONCLUSION

Defendants' motion to dismiss is denied. The Clerk of the Court is directed to terminate the motion at docket number 34.

Dated: New York, New York
      April 30, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge